**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 07-0268 (RWR) |
| METRO SANDBLASTING & PAINTING, INC. a/k/a  Metro Contracting Specialties Inc. a/k/a  Metro Sandblasting And Painting Inc. | ) ) ) ) | |
| Defendant. | ) ) | |

## MOTION FOR ENTRY OF JUDGMENT BY DEFAULT

Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Pension Fund" or "Plaintiff"), respectfully moves this Court for entry of judgment by default against Defendant, Metro Sandblasting & Painting, Inc. a/k/a Metro Contracting Specialties Inc. a/k/a Metro Sandblasting And Painting Inc. ("Company" or "Defendant") in the amount of $54,558.78 which includes contributions due for the period April 2006 through November 2007, interest, liquidated damages and attorneys' fees and costs incurred by the Pension Fund pursuant to 29 U.S.C. §185(a) and 1132(g)(2)(A) through (D), and for injunctive relief.

In support of this Motion, Plaintiff relies upon the allegations in its Complaint, the Declaration of Thomas Montemore[1] and the Declaration of Elizabeth A. Coleman.[2]

The grounds for this Motion are as follows:

1.     Prior to the commencement of this action, the Plaintiff attempted to resolve this delinquency in an amicable manner.

---

[1]     The Declaration of Thomas Montemore ("Montemore Declaration") is attached to this Motion as Exhibit 1. The exhibit referenced in the Montemore Declaration (Labor Contract) is attached as Exhibit 2.

[2]     The Declaration of Elizabeth A. Coleman ("Coleman Declaration") is attached to this Motion as Exhibit 3. The exhibits referenced in the Coleman Declaration are attached to this Motion as Exhibits 4, 5 and 6.
191988-1

2.      The requested payments were not received and the Complaint in this matter was filed on February 5, 2007. The Complaint was served on Defendant on October 22, 2007, in accordance with the September 18, 2007 Order authorizing substituted service.

3.      No Answer to the Complaint has been filed by Defendant.

4.      On November 19, 2007, Plaintiff filed a Request to Clerk to Enter Default against Defendant pursuant to Fed. R Civ. P. 55(a). A copy was sent via first-class mail, postage prepaid, to Defendant.

5.      On November 20, 2007, the Clerk of the Court entered default against Defendant.

6.      Defendant is neither an infant nor incompetent person.

**WHEREFORE**, Plaintiff seeks the following relief:

(a)      Judgment entered as set forth in the proposed Order and Judgment attached to this Motion;

(b)      Such other and further relief as the Court deems just, necessary and appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:/s/     Kent G. Cprek                   
KENT G. CPREK, ESQUIRE
(I.D. NO. 478231)
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615
Date:   January 16, 2008                     Attorney for Plaintiff
OF COUNSEL:
ELIZABETH A. COLEMAN, ESQUIRE
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106
(215) 351-0644

192264-1                                      2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) ) | 07-0268 (RWR) |
| METRO SANDBLASTING & PAINTING, INC. a/k/a  Metro Contracting Specialties Inc. a/k/a  Metro Sandblasting And Painting Inc. | ) ) ) ) | |
| Defendant. | ) | |

## DEFAULT JUDGMENT

Upon consideration of the Complaint and Motion for Entry of Judgment by Default of the Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Fund," "Pension Fund" or "Plaintiff"), it appears to the Court that Defendant, Metro Sandblasting & Painting, Inc. a/k/a Metro Contracting Specialties Inc. a/k/a Metro Sandblasting And Painting Inc. ("Company" or "Defendant"), has willfully failed to appear, plead or otherwise defend, and it is ORDERED:

1.      Plaintiff's Motion is **GRANTED**;

2.      Judgment is entered against Company and in favor of Plaintiff in the total amount of $54,558.78 itemized as follows:

(a)      Unpaid contributions for the period of April 2006 through November 2007 in the amount of $38,118.10 under 29 U.S.C. § 1132(g)(2);

(b)      Returned check fees for the months April 2006 and May 2006 in the amount of $100.00;

191988-1

(c)    Interest from the date contributions became due through January 15, 2008 in the amount of $2,309.98;

(d)    Liquidated damages in the amount of $7,622.02. As indicated above, Defendant owes $38,118.10 in unpaid contributions. Defendant owes liquidated damages totaling twenty percent (20%) of the unpaid contributions. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages in the amount of $7,622.02.

(e)    Attorneys' fees and costs in the amount of $6,508.68 incurred by Plaintiff through January 16, 2008, as provided in 29 U.S.C. § 1132(g)(2)(D).

3.    Defendant, its owners, officers, agents, servants, attorneys and all persons acting on their behalf or in conjunction with them shall be and hereby are restrained and enjoined from refusing to file complete, proper and timely remittance reports with accompanying pension contributions for all periods for which Defendant is obligated to do so under its collective bargaining agreement(s).

4.    If further action by the Pension Fund is required to obtain payment of the amounts owed by Defendant, it may apply to this Court or to the court in which enforcement is sought, for such further reasonable attorneys' fees and costs in addition to those set out in Paragraph 2(d) above. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); International Painters and Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

5.    Within ten (10) days of the entry of this Order, Defendant shall fully and

192264-1                                2

accurately complete and submit to the Plaintiff any and all outstanding remittance reports, including but not limited to reports and contributions for the period April 2006 through November 2007, together with a check for the full amount of the contributions and dues due, including interest and liquidated damages.

6.    Within twenty (20) days of a request by Plaintiff or its counsel, Defendant shall make available to the designated representative of the Plaintiff all payroll books and related records necessary for Plaintiff to ascertain the precise amount of any delinquent contributions due and owing to Plaintiff for all periods in which Defendant is obligated to make fringe benefit contributions to the Plaintiff and Defendant shall bear the costs of said audit.

7.    Plaintiff shall have the right to conduct future audits for all relevant periods, including the time periods covered by this judgment. Defendant shall be and hereby is restrained and enjoined from failing and refusing to submit to such audits by certified public accountants selected by Plaintiff and shall produce all payroll books and related records requested by Plaintiff, including, but not limited to, payroll, wages, general ledger and cash disbursement records, compensation insurance audits and any other pertinent records deemed necessary for the purpose of ascertaining and/or verifying payments and/or liabilities to Plaintiff. Defendant shall pay Plaintiff any additional amounts found owing, plus such other amounts as set forth in the Agreement, the Agreement and Declaration of Trust of the Pension Fund, the International Painters and Allied Trades Industry Pension Plan, ERISA or any other applicable law.

8.    If additional delinquencies are discovered pursuant to the submission of the remittance reports or to the audit referred to above, or as a result of additional information that becomes available to the Plaintiff, the Plaintiff may apply to the Court for an additional or supplemental judgment reflecting any additional delinquencies, interest, liquidated damages,

192264-1                                                    3

attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. § 1132(g)(2) together with any audit costs incurred by the Plaintiff.

9.    Plaintiff is awarded reimbursement of all additional attorneys' fees and costs it incurs in the collection and enforcement of this judgment as well as those incurred in the collection of delinquent contributions which may be found to be due as a result of the audit provided for in this Order.

10.    If Defendant fails to comply with any of the terms of this Order, the Plaintiff may, in addition to pursuing the remedies provided for under Federal Rule of Civil Procedure 69, reopen this case upon motion to the Court and notice to the Defendant, and may at that time ask for further appropriate monetary and/or injunctive relief.


_____
Richard W. Roberts         J.
United States District Judge

Date:_____

Copies of this Default Judgment shall be sent to:

Kent G. Cprek, Esquire
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683

Metro Sandblasting & Painting, Inc.
a/k/a Metro Contracting Specialties Inc.
a/k/a Metro Sandblasting And Painting Inc.
56465 Romeo Plank Road
Macomb, MI  48042

192264-1                              4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
)
                 Plaintiff, )      CIVIL ACTION NO.
     v. )
)      07-0268 (RWR)
METRO SANDBLASTING & PAINTING, INC. )
   a/k/a  Metro Contracting Specialties Inc. )
   a/k/a  Metro Sandblasting And Painting Inc. )
)
             Defendant. )

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR ENTRY OF JUDGMENT BY DEFAULT**

Plaintiff, International Painters and Allied Trades Industry Pension Fund (the "Pension

Fund"), is entitled to an Order entering judgment by default against Defendant, Metro

Sandblasting & Painting, Inc. a/k/a Metro Contracting Specialties Inc. a/k/a Metro Sandblasting

And Painting Inc. ("Company" or "Defendant"), in the amount of $54,558.78.

The Pension Fund served its Complaint on Defendant on October 22, 2007, in accordance

with the September 18, 2007 Order authorizing substituted service.  To date, Defendant has

failed to answer the Complaint or to otherwise defend this action.  Plaintiff filed a Request to

Clerk to Enter Default against the Defendant pursuant to Fed. R. Civ. P. 55(a) on November 19,

2007.  Default was entered against the Defendant on November 20, 2007.  Plaintiff now submits

its motion for entry of judgment by default.

In light of Defendant's default and Defendant's continuing failure to appear or otherwise

defend, the Pension Fund is entitled to judgment by default against Defendant without a hearing.

Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983); Draisner v. Liss

Realty, 211 F. 2d 808 (1954). Moreover, where a defendant, such as the one here, fails to

respond to the Complaint, all factual allegations in the Complaint are deemed admitted.

Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d

Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of

fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978)

(allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent

conveyance or voidable preference).

Defendant is and has been party to collective bargaining agreements (singly or jointly

"Labor Contract") with the various local unions and district councils affiliated with the

International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"),

including Local Union No. 1474 ("Local 1474"). Under the Labor Contract, Defendant is

required to remit fringe benefit contributions and other sums to Plaintiff. See, Exhibit I,

Montemore Declaration, ¶¶ 5, 6. The failure to pay these fringe benefit contributions and other

amounts results in a delinquency to the Plaintiff. Id.

## ARGUMENT

A.   **ENTRY OF JUDGMENT AGAINST DEFENDANT FOR UNPAID
     CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES,
     ATTORNEYS' FEES AND COSTS AND RETURNED CHECK FEES IS
     APPROPRIATE.**

1.   **Company is Bound by the Terms and Conditions of a Collective
     Bargaining Agreement with the Union.**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore

Declaration, ¶ 5. Under the terms of the Labor Contract, the employer agrees to be bound by the

Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement", attached as

Exhibit 1 to the Complaint filed in this matter and incorporated by reference)and the

192264-1                                    2

International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) and by all amendments thereto and actions taken by the trustees of the Pension Fund. See, Complaint, ¶¶ 7-8; Exhibit 1, Montemore Declaration, ¶¶ 5, 6. The Labor Contract provides for the payment of contributions to the Pension Fund for time worked by or paid to employees who perform work covered by its terms and conditions. See, Exhibit 1, Montemore Declaration, ¶ 6.  Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Pension Fund. Id. Under the Trust Agreement, The Pension Fund has the right to audit the signatory's payroll books and related records to determine that all of the required contributions have been paid. See, Trust Agreement, Art. VI, Sec. 6.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, provides:

> Every Employer who is obligated to make contributions to a bargained agreement shall … make contributions in accordance with … such agreement.

If an employer fails to make the contributions as required by the collective bargaining agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section 515:

A.    the unpaid contributions;

B.    interest on the unpaid contributions;[1]

---

[1]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. *See*, Complaint, Exhibit 2.

192264-1                                3

C.    an amount equal to the greater of:

    (i)    interest on the unpaid contributions; or

    (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (a);[2]

D.    reasonable attorneys' fees and costs of the action, to be paid by the defendant; and

E.    such other legal or equitable relief as the court deems appropriate.

As stated above, Defendant has failed to submit contributions for the period April 2006 through November 2007. See, Exhibit 1, Montemore Declaration, ¶ 7. As a result, Plaintiff is entitled to judgment in at least the amount of $54,558.78.

### a. Defendant owes unpaid benefit contributions in the amount of $38,118.10.

4.    Defendant owes the Pension Fund at least $38,118.10 in contributions for the period April 2006 through November 2007. This amount includes estimates for the period June 2006 through November 2007, a period for which Defendant has failed to submit both contributions and remittance reports to the Pension Fund. For the period in which the Pension Fund has not received remittance reports and corresponding contributions, the Pension Fund is forced to estimate an amount due from Defendants. The estimate for the period June 2006 through November 2007 is based on information available to the Funds that twelve (12) employees were working forty (40) hour weeks during this period. Montemore Declaration, ¶ 7.

---

[2]    ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint, Exhibit 1.

192264-1                                  4

**b. Defendant owes interest through January 15, 2008 in the amount of $2,309.98.**

Section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. Interest accruing through January 15, 2008 on Defendant's delinquent contributions totals $2,309.98. Interest shall continue to accrue on unpaid contributions in accordance with the Plan and ERISA until the date of actual payment. Montemore Declaration, ¶ 9; 29 U.S.C. § 1132(g)(2); 26 U.S.C. § 6621.

**c. Defendant owes liquidated damages in the amount of $7,622.02.**

ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust Agreement (attached as Exhibit 1 to the Complaint filed in this matter and incorporated by reference) also provides for the assessment of liquidated damages on contributions paid after the due date. As indicated above, Defendant owes $38,118.10 in unpaid contributions. Twenty percent (20%) of this amount is $7,622.02. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages in the amount of $7,622.02. Montemore Declaration, ¶ 10; 29 U.S.C. § 1132(g)(2)(C).

**d. Defendant owes attorneys' fees and costs in the amount of $6,508.68**

Plaintiff has incurred $6,508.68 in attorneys' fees and costs in connection with this matter through January 16, 2008. See, Exhibit 2, Coleman Declaration, ¶ 2; Exhibit 3. See, 29 U.S.C. §

1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and collection of any judgment entered by the Court. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989).

### e.  Defendant owes Returned Check fees in the amount of $100.00.

Defendant owes $100.00 in returned check fees for the months of April 2006 and May 2006.  Montemore Declaration, ¶ 8.

### 2.  The Pension Fund is entitled to injunctive relief

The failure of Defendant to comply with its contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. Montemore Declaration, ¶ 12.  The Pension Fund is obligated by the express mandates of ERISA and by the documents and instruments by which it is administered to provide benefits and pension credits to all of Company's employees who are otherwise eligible to receive them. Id; 29 C.F.R. 2530-200b-2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub. nom., Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc., 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether the employer makes the contributions.  Montemore Declaration, ¶ 12. For example, if employees perform work covered by the collective bargaining agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources. Id.

192264-1                                            6

Additionally, where, as here, Defendant fails to remit its contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Id. This loss of investment income combined with the Pension Fund's requirement to continue paying benefits to Company's employees (as well as to the employees of other signatory contractors) affects the actuarial soundness of the Pension Fund as well as deplete the resources available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendant's failure to pay its contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Company's employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendant's failure to comply with its contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendant's malfeasance causes the Pension Fund, the Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200 (D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986).

**B.    DEFENDANT SHOULD BE ORDERED TO PRODUCE THE APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING.**

The determination of an employee's eligibility for benefits is based upon information contained in the remittance reports, to be filed monthly by each and every signatory employer.

Montemore Declaration, ¶¶ 6, 12.  A proper determination of eligibility is not possible if remittance reports are not submitted or if they contain incorrect or incomplete information. See, 29 U.S.C. § 1132(g)(2)(E) (equitable relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F. Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension Fund v. Hartline – Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit Pension Fund v. Northwest Concrete, 640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required contributions and correctly reported hours worked and paid to its employees, the Pension Fund has the right to review all of the employer's records that relate to its contributory obligation. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Trust Agreement obligates Defendant to allow the audit. See Complaint, Exhibit 1, Art. VI, Sec. 6.  The scope of records subject to review is broad, and include those records the auditors reasonably deem necessary to conduct an audit. DeMarco v. C & L Masonry, 891 F.2d 1236 (6th Cir. 1989); See also Exhibit 1, Montemore Declaration, ¶ 11. In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. Id.

An audit is necessary in this case in order to determine the exact amount due to the Pension Fund because of Defendant's failure to submit contractually-required remittance reports and furthermore, to ensure that the remittance reports submitted by Defendant are correct. See

192264-1                                                    8

Exhibit 1, Montemore Declaration, at ¶¶ 7, 11. The Defendant's obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Defendant to produce its records for an audit for all periods in which the Defendant is obligated to make contributions to the Pension Fund so that a precise determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendant for all additional amounts found to be due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, thus, requests that the Court enter a judgment against Defendant, Metro Sandblasting & Painting, Inc. a/k/a Metro Contracting Specialties Inc. a/k/a Metro Sandblasting And Painting Inc. ("Company" or "Defendant") in the amount of $54,558.78 and, in light of the clear statutory intent of ERISA, it is further requested that this Court grant the Pension Fund all other relief to which it may be entitled under applicable law and as requested in the Motion for Default Judgment.

Respectfully submitted,
JENNINGS SIGMOND, P.C.

BY: /s/ Kent G. Cprek
KENT G. CPREK (BAR NO. 478231)
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615
Counsel for Plaintiff

DATE: January 16, 2008
OF COUNSEL:
Elizabeth A. Coleman, Esquire
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0644

192264-1                                9

## CERTIFICATE OF SERVICE

I hereby certify this 16 day of January, 2008, that I caused to be served a copy of the

foregoing Motion for Entry of Judgment by Default, Memorandum of Points and Authorities in

Support thereof, Declaration of Thomas C. Montemore, Declaration of Elizabeth A. Coleman

and proposed Default Judgment by sending a copy of same via U.S. Mail, postage-prepaid to:

Metro Sandblasting & Painting, Inc.
a/k/a Metro Contracting Specialties, Inc.
a/k/a Metro Sandblasting and Painting, Inc.
56465 Romeo Plank Road
Macomb, MI  48042

DATE: January 16, 2008                      s/ KENT G. CPREK
                                            KENT G. CPREK, ESQUIRE

192264

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
                                     )
               Plaintiff, )      CIVIL ACTION NO.
   v. )
                                       )      07-0268 (RWR)
METRO SANDBLASTING & PAINTING, INC. )
   a/k/a Metro Contracting Specialties Inc. )
   a/k/a Metro Sandblasting And Painting Inc. )
                                       )
              Defendant. )

## DECLARATION OF THOMAS C. MONTEMORE

THOMAS MONTEMORE states and declares the following:

1.     My name is Thomas C. Montemore and I am the Assistant to the Fund

Administrator of the International Painters and Allied Trades Union and Industry Pension Fund

("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I

served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the

Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from

1982 to 1986, and File Clerk beginning in 1979.

2.     The Pension Fund is an "employee benefit pension plan" as defined in Section

3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union

of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry

whose employees are members of or otherwise represented by the Union and its district councils

and local unions, for the purpose of providing retirement income to the employees. The Pension



Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

3.    I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.    The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.    My review of the regular business records maintained by the Pension Fund reveals that the defendant, Metro Sandblasting & Painting, Inc. a/k/a Metro Contracting Specialties Inc. a/k/a Metro Sandblasting And Painting Inc. ("Defendant"), was a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Union of Painters and Allied Trades, AFL-CIO, CLC. True and correct copies of relevant provisions of the Labor Contract are attached as Exhibit 2. Under the terms of the Labor Contract, Company is bound to the Trust Agreement and Plan. See, Exhibit 2, Labor Contract, Art. IV § 2(d).

6.    The collective bargaining agreement requires Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due

192272-1                                    2

the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7.     My review of the records reveals that Defendant owes contributions in at least the amount of $38,118.10 for the period April 2006 through November 2007.  This amount includes estimates for the period June 2006 through November 2007, a period for which Defendant has failed to submit both contributions <u>and</u> remittance reports to the Pension Fund.  For the period in which the Pension Fund has not received remittance reports and corresponding contributions, the Pension Fund is forced to estimate an amount due from Defendants.  The estimate for the period June 2006 through November 2007 is based on information available to the Funds that twelve (12) employees were working forty (40) hour weeks during this period.

8.     Defendant owes returned check fees in the amount of $100.00 for the months of April 2006 and May 2006.

9.     Defendant owes interest through January 15, 2008 in the amount of $2,309.98 on the unpaid pension contributions set forth in ¶7. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

10.     Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendant in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through January 15, 2008 is $2,309.98.  Twenty percent (20%) of Defendant's unpaid contributions is

$7,622.02. Since the interest amount ($2,309.98) is less than twenty percent (20%) of the unpaid contributions ($7,622.02), Defendant owes $7,622.02 in liquidated damages.

11.     The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips, or such other payroll records as the employer maintains which will indicate the number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

12.     Despite a continuing contractual obligation to do so, Defendant has repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its

192272-1                              4

Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions <u>and</u> the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendant, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendant's refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from

Defendant to cover those benefits. Therefore, Defendant should be required to submit timely current contributions and remittance reports in the future.

13.     I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendant and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. §1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: _____1/15/08_____

THOMAS C. MONTEMORE

11

# ARTICLES OF AGREEMENT

## BY AND BETWEEN

### PAINTING AND ALLIED TRADES CONTRACTORS

#### PORT HURON AND VICINITY

AND

### PAINTERS AND ALLIED TRADES
### DISTRICT COUNCIL 26
AND
### LOCAL 1474

## INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES

### AFL-CIO, CLC

### AFFILIATED WITH

### AMERICAN FEDERATION OF LABOR, AFL-CIO

### MICHIGAN STATE CONFERENCE OF PAINTERS

### GREATER DETROIT BUILDING TRADES COUNCIL
OF
MICHIGAN

### AND THE

### MICHIGAN STATE BUILDING TRADES COUNCIL

### 2004-2006



22

## TABLE OF CONTENTS:

Preamble-------------------------------------------------- 3

Article I --------- Definitions -------------------------- 3-4

Article II --- Union Shop -------------------------------- 4-5

Article III -- Base wage and Premiums -------------------- 5

Article IV --- Fringe Benefits & Payroll Deductions ----- 5

         International Pension ------------------------- 7

      Michigan State Painters Insurance Fund -------- 7-10

            Other Contributions ----------------------- 10

            Deductions -------------------------------- 11

            Compliance -------------------------------- 11

Article V ---- Work Hours and Payday -------------------- 11

            Regular Hours ----------------------------- 11

            Overtime and Shift Premium --------------- 11-12

            Payday ------------------------------------ 11-12

Article VI --Transportation & Travel Expenses----------- 12

Article VII -- ---------Payable Time -------------------- 12

Article VIII - Discharge and Lay off -------------------- 12-13

Article IX --- Apprentices------ ------------------------ 13

Article X ---- Spray Regulations ----------------------- 14

Article XI ---------------------------------------------- 14-15

Article XII -- Insurance -------------------------------- 15

Article XIII - Stewards --------------------------------- 15

Article XIV -- General Provisions ----------------------15-17

Article XV --- Maintenance of Conditions & Record Keeping - 17

Article XVI ---State Laws ------------------------------- 17

though they were at work.

**Section 2.** The rate for any lead abatement work, paper hanging or working with hazardous material shall be one dollar ($1.00) more than the painter's base rate.

**Section 3.** Foreman's rate shall be at least one dollar ($1.00) per hour above the highest rate paid on the crew.

**Section 4.** Sand Blasting, Steam Cleaning, Acid Cleaning, and all work ordinarily performed as such, shall be paid one dollar ($1.00) above the base rate.

**Section 5.** All Ladder work at or above forty (40) feet, all scaffold work at or above forty (40) feet, Swing Stage, Boatswain Chair, Window Jacks and all work performed over a falling height of forty (40) feet shall be paid at one dollar above the base

**Section 6.** All spray gun work, pick pullers and those handling needles, blowing off by air pressure and any person rigging (setting up and moving off the ground) shall be paid at one dollar ($1.00) per hour above the base rate.

**Section 7.** All work such as steeple jack, tanks, gas holders, stacks, flag poles, radio towers and beacons, power line towers, bridges, etc., shall be paid at one dollar ($1.00) per hour above the base rate and this shall be paid from the ground up.

**Section 8.** When a premium is paid it shall be paid for the whole shift and only one premium shall be in effect per employee.

**Section 9.** Work with any hazardous material shall be paid at one dollar above the base rate.

**Section 10.** Industrial repainting, Commercial repainting and bridges shall be paid at ninety (90) percent of the base rate plus any premium and full fringe benefits.

**Section 11.** Residential, (single family dwellings only) work shall be paid at eighty (80) percent of the base rate plus full fringe benefits.

WAGES FOR APPRENTICES (see Article VIII)

### ARTICLE IV

### FRINGE BENEFITS AND PAYROLL DEDUCTIONS

**Section 1. Fringe Benefits.** Effective June 1, 2001 and thereafter until amended, the Employer shall pay the following at rates specified below:

Michigan State Painters Insurance Fund ---------6/1/04 -- $5.20

IUPAT Pension Fund ------------------------------------------------- 3.70/hr.
Apprenticeship Training Fund, Labor Management Cooperation Fund &
    Building Trades per capita ----------------------------------- .50/hr.
                        Vacation Savings ------------------ 1.75/hr.
                        Administrative Dues Checkoff---- 5% of Gross Wages

Administrative Dues to be mailed to:D.C.26 P.O.Box 497 Freeland Mi.48623

Amounts Paid for Vacation Savings and Administrative Dues Checkoff shall be deducted from Employees' wages.

**Section 2. International Pension.**

(a) For each hour or portion thereof for which an Employee receives pay, the Employer shall make a contribution of one dollar and seventy cents ($1.70) to the IUPAT Union and Industry Pension Fund.

(b) For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the Employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(c) Contributions shall be paid on behalf of any Employee starting with the Employee's

77

first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary Employees.

(d) The payments to the Pension Fund required above shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though they had actually signed the same.

(e) The Employer hereby irrevocably designates as its representatives on the board of Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust.

(f) All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with Article V, Section 6 of the said Agreement and Declaration of Trust.

(g) If an Employer fails to make contributions to the Pension Fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

(h) The Pension Plan and Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

Section 3. Michigan State Painters Insurance Fund.

(a) Michigan State Painters Insurance Fund. The Employer agrees to contribute to the Michigan State Painters Insurance Fund (hereinafter "Insurance Fund") under the terms and conditions established by the Insurance Fund and contained below, at the following rates per hour worked, or portion thereof, for work covered by this Agreement performed during time periods stated below:

6/1/01 -- $4.05

If the Trustees of the Insurance Fund deem it necessary, the Employer, on receipt of due notification, agrees to pay an increase in the hourly contribution as determined by the Trustees, in addition to any monetary obligations incurred by the Employer under this Agreement. Employees shall be responsible for the first 25 cents of any increase in any one year, the balance of any increase shall come from the contractor as an increase to the fringe package.

(b) The Employer agrees to be bound by and to the Agreements and Declarations of Trust of the Insurance Fund (referred to as the "Fund"), as amended, as though he, she or it had actually signed the same. The Employer irrevocably designates on the Boards of Trustees of the Insurance Fund those Trustees now serving or who will in the future serve as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken or to be taken and all rules adopted or to be adopted by the Trustees within the scope of their authority. The rules currently in effect include but are not limited to the following:

(1) The Employer shall submit a contribution form and pay all required contributions and deductions under this Agreement except contributions to the IUPAT Union and Industry Pension Fund, Apprenticeship funds, and Administrative Check off through payment to the "Michigan State Painters Insurance Fund mailed to the Funds' third-party administrator, located at 6525 Centurion Dr. Lansing, Michigan, 48917-9275, or at such other address as the Trustees shall advise, no later than the fifteenth (15th) day of the month immediately following the month in which work was performed requiring such contributions.

The Employer agrees to pay as liquidated damages ten (10%) percent of any late payment if the envelope in which such payment is mailed is postmarked by the U. S. Postal Service later than the fifteenth (15th) day of the month immediately following the month in which work was performed requiring such contributions, and to pay twenty (20%) percent of any late payment if the envelope in which such payment is mailed is postmarked by the U. S. Postal Service later than the first day of the second month immediately following the month in which work was performed requiring such contributions. The aforesaid liquidated damages shall not be considered a penalty but are intended to offset the

88

additional burden placed on the Funds as a result of the Employer's delinquency.

(2) The Employer agrees to keep accurate books and records, using generally accepted accounting procedures, reflecting the payment of wages, fringe benefit contributions and any amounts paid to subcontractors, as well as the number of hours worked by employees and other persons performing work for the Employer, adequate to permit the Trustees of the Funds to determine the accuracy of the Employer's contributions to the Funds, and agrees to preserve such records for not less than six (6) years.

(3) The Employer agrees to promptly furnish to the Trustees of the Funds, or their designated agent, on demand, any and all records of the Employer for the purpose of verifying the accuracy of contributions paid to the Funds, including, documents reflecting payment of wages, fringe benefit contributions and any amounts paid to subcontractors, as well as the number of hours worked by employees and other persons performing work for the Employer, regardless of craft or occupation or how classified by the Employer (hereinafter collectively referred to as "employees"), including but not limited to the following:

(a) Payroll records of each employee, regardless of craft or occupation, showing the employee's name, address, social security number, occupation, straight time and overtime hours worked, rate of pay, gross pay, F.I.C.A. deductions, withholding tax deductions, other deductions, check numbers and net pay.

(b) Payroll journals (registers) for each year.

(c) General check registers, disbursement journals and other documents disclosing payments made.

(d) All time or clock cards.

(e) All worker's compensation forms and reports.

(f) Copies of W-2 forms filed for each employee, regardless of craft or occupation.

(g) Copies of W-4 forms filed for each employee, regardless of craft or occupation.

(h) Copies of W-3 forms filed for each year.

(i) Copies of 941 forms filed for each year.

(j) Copies of 940 forms filed for each year.
(k) Copies of 1099 forms filed for each year.

(l) Copies of 1096 forms filed for each year.

(m) Copies of M.E.S.C. forms filed for each quarter.

(n) Contribution reports for each month and canceled checks supporting payment of same.

(o) Canceled checks.

(p) Records of all other business entities owned or controlled by any person owning or controlling the Employer.

(q) Job files and other records relating to parties with whom the Employer subcontracted.

(r) Job files and other records relating to projects on which the Employer worked.

Should the Employer's books and records be so incomplete as to make it difficult or impossible for the auditor to determine the amount of contributions due the Funds, the Trustees of the Funds may make a determination of the amount of contributions due based upon any available evidence, and the burden of proof shall shift to the Employer to disprove the determination made by the Trustees.

The cost of any payroll audit shall be paid by the Employer if the audit discloses additional

Local 1474 Working Agreement 2004-2006                    Page No. 8

99

contributions due to the Funds. The Employer shall also pay liquidated damages of twenty (20%) percent of all contributions disclosed in the audit as owing to the Funds, in addition to the actual delinquent contributions.

(4)  The Employer agrees that any person performing work covered under this Agreement who works part-time in a non-bargaining unit position, who maintains any financial interest in the Employer, direct or indirect (including ownership by a spouse), or who is a salaried employee, shall be treated for the purpose of fringe benefit contributions to the Funds as though employed full time in the bargaining unit. Contributions on behalf of such persons shall be made for all hours actually worked, but not less than forty hours per week, regardless of whether the hours are worked in the bargaining unit.

(5)  Subsequent to the planned termination date of this Agreement, the Funds shall be permitted to accept fringe benefit contributions from the Employer if the Employer reports contributions on a standard fringe benefit contribution reporting form, if the Trustees of the Funds are not notified of the termination of the Employer's collective bargaining agreement with the Union and that negotiations over a new collective bargaining agreement have reached an impasse or in any other situation in which the Trustees in good faith believe that the Employer maintains an obligation to pay contributions to the Funds under a written agreement specifying the basis on which contributions are to be made to the Funds, whether or not such agreement has terminated.

(6)  The Employer shall not be entitled to return of any contributions paid to the Funds, except if an Employer requests a return of contributions paid as a result of a mistake and the Trustees of the Funds, in their sole discretion, determine that the equities dictate return of such contributions and that such return will not detrimentally affect the actuarial soundness and financial integrity of the Funds or have any direct, adverse effect on participants on whose behalf such contributions for which a refund is sought were paid.

(7)  The Employer agrees not to subcontract or sublet any work covered by this Agreement by any person, corporation or other business entity not a party to a collective bargaining agreement with the Union. If an Employer subcontracts or sublets any work covered by this Agreement to any person, corporation or other business entity not party to a collective bargaining agreement with the Union, the Employer shall pay to the Michigan State Painters Insurance Fund an amount equal to gross wages, including fringe benefit contributions, which would have been earned by Employees working under this Agreement had the Employer not subcontracted or sublet the work to the person, corporation or other business entity not party to a collective bargaining agreement with the Union.

(8)  It is expressly understood that nothing contained in this Agreement shall deny the Trustees of the Funds the right to pursue whatever legal remedies are available to them to collect delinquent contributions or otherwise enforce the Employer's obligations to the Funds. Any action by the Trustees to enforce the Employer's obligations to these Funds shall be expressly excepted from any grievance or arbitration procedure or any "no strike" clause which may be set forth elsewhere in this Agreement. In the event the Trustees resort to legal processes to collect delinquent contributions or liquidated damages, obtain an audit or otherwise enforce the Employer's obligations to the Funds, the Employer shall be responsible for all expenses incurred by the Trustees, including actual auditor, expert witness and attorney fees, filing fees and deposition costs.

(9)  If an Employer fails to timely pay fringe benefit contributions or otherwise violates its obligations under this Agreement, the Trust Agreements of the Funds or any Rules and Regulations adopted by the Trustees more than three times in any twelve consecutive month period, such Employer shall be deemed a "habitual offender". The Funds' Trustees may, in their sole discretion, impose such additional requirements to protect the Funds and their Participants as they deem necessary.

(10)  The Union may engage in a strike against any Employer which has failed to fulfill any of its obligations to the Funds, and such strike action shall not be a violation of any provision of this Agreement and shall be expressly excepted from the provisions and requirements of the grievance procedures provided in this Agreement.

Section 4.  Other Contributions

(A)  Employers shall remit to Painters Local Union No. 1474 the sum of fifty cents ($.50/hr.) per hour for each hour worked by all employees covered by this agreement. This sum includes five cents to the International Joint Painting, Decorating and Drywall Apprenticeship and Manpower Training Fund ("International Apprenticeship Fund"), five cents to the L.M.C.F. (below) and three + one cents per hour to the Greater Detroit/Michigan State Building Trades and the remainder for our local safety and upgrade classes program.
These contributions shall be remitted monthly by fifteenth day of each month to:

1010

Painters Local Union No. 1474
2441 West Water Street
Port Huron, MI 48060

(B)  The Employer agrees to make payments to the Painters and Allied Trades Labor Management Cooperation Fund ("Fund") for each Employee covered by this Agreement, as follows:

(1)  For each hour or portion thereof, for which an Employee receives pay, the Employer shall make a contribution of five cents ($.05) per hour to the Fund.

(2)  For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the Employee in accordance with the Agreement shall be counted as hours for which contributions are payable.

(3)  Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary Employees.

(4)  The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

(5)  The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

(6)  All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

(7)  If an Employer fails to make contributions to the Fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees.  The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

Section 5.  Deductions.

(a)  The Employer agrees to deduct One dollar seventy-five cents ($1.75) per hour from the Employees' base wages and pay the amount deducted to the Employees' individual Vacation Savings accounts.    Said deductions shall be included and remitted on the Employer's monthly remittance report submitted to TIC with monthly insurance report.

(b)  It is further agreed that there will be an administrative dues checkoff and the Employer agrees to deduct Five percent (5%) of gross wages from all Employees and pay same to the Painters and Allied Trades District Council 26..

(1)  When the Employer performs a job within the jurisdiction of a Local Union or District Council whose by-laws contain a provision for administrative dues or business agent "assessment", the Employer shall check off from the wages of all Employees covered by this Agreement and employed on that job administrative dues or business agent "assessments" in the amounts stated in that Local Union's or District Council's by-laws, and shall remit that amount to that Local Union or District Council.

(2)  If the by-laws of the Local Union or District Council in whose jurisdiction the work is being performed contains no provision for administrative dues or business agent "assessment", the Employer shall check off from the wages of all Employees covered by this Agreement and employed on that job administrative dues or business agent "assessments" in the amount stated in the by-laws of each Employee's "home" Local Union or District Council.

(3)  The Local Union or District Council will notify the Employer in writing of the amount of administrative dues or business agent "assessment" specified in the by-laws.

(4)  On or before the 15th day of each month, the Employer will remit to the appropriate Local Union or District Council the entire amount due and owing as to each Employee for the

Local 1474 Working Agreement 2004-2006                    Page No. 10

M5110
1474

## MEMORANDUM OF AGREEMENT

### BROTHERHOOD OF PAINTERS AND ALLIED TRADES, LOCAL UNION NO. 1474
### PORT HURON, MICHIGAN

THE UNDERSIGNED EMPLOYER HEREBY AFFIRMS THAT IT HAS READ AND
UNDERSTANDS AND AGREES TO COMPLY WITH AND BE BOUND BY ALL OF THE
PROVISIONS CONTAINED IN THE CURRENT AND SUBSEQUENT APPROVED
STANDARD FORM COLLECTIVE BARGAINING AGREEMENTS ENTERED INTO
BETWEEN PAINTERS LOCAL 1474 AND EMPLOYERS IN LOCAL 1474'S AREA,
INCLUDING COMPLYING WITH PROVISIONS REGARDING WAGES, FRINGE
BENEFITS AND ALL OTHER TERMS AND CONDITIONS OF THE COLLECTIVE
BARGAINING AGREEMENTS.  THE UNDERSIGNED EMPLOYER EXPRESSLY AGREES
TO BE BOUND BY THE TERMS OF THE TRUST AGREEMENTS UNDER WHICH THE
FRINGE BENEFIT FUNDS REFERRED TO IN THE COLLECTIVE BARGAINING
AGREEMENTS OPERATE.  THE EMPLOYER FURTHER RECOGNIZES PAINTERS
LOCAL 1474 AS THE EXCLUSIVE COLLECTIVE BARGAINING AGENT FOR
EMPLOYEES PERFORMING WORK COVERED IN THE COLLECTIVE BARGAINING
AGREEMENTS ON ALL PRESENT AND FUTURE JOB SITES WITHIN THE
JURISDICTION OF PAINTERS LOCAL 1474.

EMPLOYER

BY: _____

DATED: 7-7-05

_Metro Sand Blasting And Painting_
NAME OF EMPLOYER

_56465 Romeo Plank Rd._
ADDRESS _Macomb MI 48042_

_886-281-0165_
TELEPHONE NUMBER

PAINTERS LOCAL 1474

BY: _____

DATED: 7-7-05

_For This Job Only_

WORKER'S COMPENSATION
  POLICY NUMBER

M.E.S.C. NUMBER

STATE LICENSE NUMBER

EMPLOYER IS A SOLE PROPRIETORSHIP _____
PARTNERSHIP_____ OR CORPORATION _X_.

IF PARTNERSHIP, IDENTIFY PARTNERS;
IF CORPORATION, IDENTIFY OFFICERS AND
STATE OF INCORPORATION.

_Steve Svinte_

The parties hereby affirm this Agreement through their signatures below:

X Corporation

____ Sole Proprietor

____ Partnership

_Steve Smite_

Printed Employer Name

EMPLOYER SIGNATURE                    UNION SIGNATURE

Dated: _7-20-05_                      Dated: _7-20-05_

_Metro Sandblasting AND Painting Inc_

COMPANY NAME

_56465 Romeo Plank    Macomb    MI    48042_

ADDRESS          CITY          ST.          ZIP

_____                    _____

Telephone Number                    Fax Number

                                    _5,000.00_

_____                    Amount of Security

Federal Employer                    Deposit Posted
Identification Number

_____                    _____

Worker's Comp. No.                  State License No.

_____

MESC No.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
                                              )
                   Plaintiff, )         CIVIL ACTION NO.
    v. )
                                                )         07-0268 (RWR)

METRO SANDBLASTING & PAINTING, INC. )
      a/k/a  Metro Contracting Specialties Inc. )
      a/k/a  Metro Sandblasting And Painting Inc. )
                                              )
                 Defendant. )

## DECLARATION OF ELIZABETH A. COLEMAN, ESQUIRE

ELIZABETH A. COLEMAN states:

1.      I am an associate with the law firm of Jennings Sigmond, P.C. with responsibility

for the above captioned case captioned.  I submit this declaration to support an award of attorney

fees to Plaintiff.

Case Fees

2.      Attached as Exhibit 3 to Plaintiff's Motion for Entry of Judgment by Default is a

list showing all work performed by the office of Jennings Sigmond, P.C. and related costs in

connection with in this action through January 16, 2008.  The listing was prepared from

contemporaneous attorney time and expenses records and bills, the originals of which are

maintained in the regular business records of Jennings Sigmond. Each piece of work is

separately coded and the work performed is described.  The fees relevant to this case are

$5,018.00 and expenses are $1,490.68 for a total of **$6,508.68**.

3.      The identity of those performing services related to this matter and normal hourly

rates are as follows:

192264



| INITIALS | NAME | TITLE | HOURLY RATE |
|----------|------|-------|-------------|
| SGR | Sanford G. Rosenthal | Partner | $220.00 |
| EAC | Elizabeth A. Coleman | Associate | $220.00 |
| KGC | Kent G. Cprek | Partner | $220.00 |
| CTM | Cathy T. Morton | Paralegal | $70.00 |

4.      Plaintiffs only seek judgment for fees in the bills, which reflect a special fee
schedule with the International Painters and Allied Trades Industry Pension Fund for a uniform
$220.00 per hour rate for all lawyers and $70.00 per hour for paralegals and clerks.

Attorney Background and Experience

5.      Sanford G. Rosenthal.  Sanford G. Rosenthal is a firm shareholder and co-leader
of the ERISA practice and has practiced law for 23 years. He received his undergraduate
education at Pennsylvania State University, where he graduated in 1971.  He worked as Audit
Manager and Office Manager in the administrative team for the Teamsters Health and Welfare
and Pension Funds of Philadelphia and Vicinity from 1971 through 1980.  He attended the
Dickinson School of Law, where he was awarded the Degree of Juris Doctor in 1983.  He is a
member of the Bar of the Supreme Court of Pennsylvania and the District of Columbia Bar.  He
is also admitted to practice before the United States Court of Appeals for the Third Circuit and
the United States District Courts for the Eastern and Middle Districts of Pennsylvania.  His
practice concentrates on the representation of multiemployer benefit funds in delinquency
litigation and counseling. A sample of his litigation experience is available in 32 published cases
that can be obtained through a Westlaw search for "AT ("Sanford G. Rosenthal") and Jennings"
in the FPENS-CS library.

6.      Kent Cprek.  Kent Cprek is a shareholder in Jennings Sigmond, P.C. and a co-
leader in its ERISA Practice and have practiced law for 28 years. He was admitted to the State

192264-1                                      2

Bar of Michigan in November 1978, the bar of the Supreme Court of Pennsylvania in May 1984 and the District of Columbia Bar in 2002. He began practice with the firm of Marston, Sachs, Nunn, Kates, Kadushin and O'Hare, P.C., Detroit, Michigan, 48226, in the representation of plan participants, multiemployer funds and labor unions from 1978 to 1981. From 1981 to 1984, he was employed by the Pension Benefit Guaranty Corporation as an attorney with responsibility for advice and litigation concerning termination of pension plans. He joined Sagot, Jennings & Sigmond, a predecessor to Jennings Sigmond, P.C. in 1984. He has a J.D. cum laude from the University of Michigan Law School and a Master of Laws in Taxation from the Georgetown University Law Center. He is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the District of Columbia Circuit, Third Circuit, Fourth Circuit, Fifth Circuit and Sixth Circuit and the United States District Courts for the District of Columbia, Eastern and Middle Districts of Pennsylvania and the Eastern and Western Districts of Michigan.

Since 1981, his work has been concentrated in the representation of employee benefit plans. His litigation experience includes representation of multiemployer plans and participants for more than twenty years, with trials of a number of actions and arbitrations and significant appellate work involving all aspects of withdrawal liability and pension law. A sample of his litigation experience is available in 53 published cases that be obtained through a Westlaw search for "AT (Cprek)" in the FPENS-CS library.

He has taught on the subject of Collections and Bankruptcy work for employee benefit plans for the International Foundation of Employee Benefit Plans.

Cprek, "Bankruptcy Basics," Attorney Pre-Conference Sessions, Annual Educational Conference, International Foundation of Employee Benefit Plans (1998)

Cprek, "Bankruptcy Basics," Attorney Sessions, Trustee and Benefit Professionals Institute, International Foundation of Employee Benefit Plans (1991)

Cprek, "Bankruptcy Collections by Employee Benefit Plans," Collection Procedures Institute, International Foundation of Employee Benefit Plans (1990)

Cprek, "Collecting from the Bankrupt Employer," Collections Procedures Institute, International Foundation of Employee Benefit Plans (April 1986)

Cprek, "Duties of Trustees in the Collection Process: The Law Today," reprinted in Employee Benefits Annual 1986: Proceedings of the Annual Employee Benefits Conference, p. 16 (IFEBP 1987).

Panelist, Seminar on Multiemployer Pension Plan Amendments Act, Pennsylvania Bar Institute (Fall 1987)

His later work has focused on benefit plan mergers and a continuing treatise on termination of single-employer pension plans. Cprek, "Single Employer Pension Plan Terminations," Schneider & Freedman (Eds.), ERISA: A Comprehensive Guide, (2d Ed. Aspen 2003).

7.      Elizabeth A. Coleman. Elizabeth A. Coleman is an associate. She graduated in 1999 from Muhlenberg College and received her law degree in 2005 from Villanova University School of Law. She served as Associate Editor of Student Work for the Environmental Law Journal. Her Note, "In re Hoery v United States: Compensating Homeowners For Loss of Property Value Due to Toxic Pollution under The Continuing Tort Doctrine" was published in the Villanova Environmental Law Journal in 2005. During law school Ms. Coleman served as a judicial intern for the honorable Susan Peikes Gantman of the Pennsylvania Superior Court. Following law school, she served as a judicial law clerk for the Honorable Albert J. Snite, Jr, in the Philadelphia Court of Common Pleas, Criminal Trial Division. Ms. Coleman has been admitted to the Bars of Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

192264-1                                    4

8.    Catherine T. Morton. Catherine T. Morton was a Paralegal in the Jennings Sigmond office for six (6) years and recently left the firm. She is experienced in corporate computer database research, electronic filing procedures throughout the country and preparation and documentation of service of complaints and other pleadings for employee benefit collections matters, in addition to other skills.

Legal Market Benchmark

9.    The time and fees charged in this case are reasonable based on prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in both the Philadelphia and District of Columbia markets.

10.    My opinion that the time and fees are reasonable is based on a number of factors, including the following:

(a)    We serve as counsel or co-counsel to over 20 multiemployer employee benefit funds groups. The firm currently has 17 lawyers, with a dedicated benefits department of seven (7) lawyers plus part-time work by three (3) other lawyers in the labor practice. The work is specialized and our competition often is large corporate firms with both employee benefits and federal litigation experience. In my experience, our fees are normally substantially lower than the charges of larger firms.

(b)    The flat rate in this case is consistent with market rates in published surveys by Altman Weil, a leading law firm consultant. Specifically, Altman Weil found a median hourly rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing both Philadelphia and the District of Columbia) and a range up to $273 per hour at the 90th percentile. See Associate Hourly Billing Rates (March 10, 2006), reprinted from http://www.altmanweil.com/PracticeSpecialtiesRates/ and attached hereto as Exhibit 4. The

192264-1                                             5

median rate for partners (shareholders) in employee benefits litigation was $305 per hour, *id.*, Practice Specialties and Hourly Rates (October 1, 2005).  A $200 rate in 2006 is only a 2.56% increase over the 2005 median for associates only.

    (c)    The fees are consistent with market ranges in a 2004 Ohio bar association survey, downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20of%20Law. pdf, attached as Exhibit 5, especially pages 26 and exhibit 27, especially after giving weight to increases from 2004 to 2006 (roughly 5% per year on average in the Ohio survey) and regional differences reflected in Altman Weil data (Ex. 4), showing an 8.33% higher rate in median associates' rates in the Middle Atlantic region ($195) over the East North Central region covering Ohio ($180)).  The Ohio survey showed median hourly associate rates in the comparable downtown Cleveland, Cincinnati and Columbus areas of $200 - $235 per hour, ranging up to $ $334 - $359 at the 90[th] percentile. See, Exhibit 5 (excerpt page 26).  It also shows that a $70 per hour paralegal rate is less than the median rate for 5 years experience in Ohio, without adjustment for regional differences, Exhibit 5 (Ex. 27).

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Signed on: 1/16/08

_____
ELIZABETH A. COLEMAN, ESQUIRE
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0644
Attorney for Plaintiff

192264-1               6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) ) | 07-0268 (RWR) |
| METRO SANDBLASTING & PAINTING, INC. a/k/a Metro Contracting Specialties Inc. a/k/a Metro Sandblasting And Painting Inc. | ) ) ) ) | |
| Defendant. | ) | |

**JENNINGS SIGMOND ATTORNEYS' FEES – JANUARY 2008**

| Date | Attorney | Task | Time |
|---|---|---|---|
| 1/2/08 | EAC | Review of Letter Sent to Company as Undeliverable; Memo to File | 0.1 |
| 1/4/08 | EAC | Update Litigation Status Report. | 0.1 |
| 1/10/08 | EAC | Preparation of Correspondence to P. Gilbert; Preparation Of Motion for Default Judgment; Review of Docket On PACER; Preparation of Montemore Declaration. | 1.5 |
| 1/11/08 | EAC | Review of Correspondence from P. Gilbert; Preparation of Correspondence to P. Gilbert; Preparation of Correspondence To Attorney S. Cramer; Continued Preparation of Montemore Declaration. | 1.1 |
| 1/14/08 | EAC | Preparation of Correspondence to T. Montemore; Continued Preparation of Montemore Declaration; Review of Docket on PACER; Continued Preparation of Motion for Default Judgment. | 1.7 |
| 1/15/08 | EAC | Review of Correspondence from T. Montemore; Preparation Of Correspondence to T. Montemore (x3); Conference with Attorney S. Cramer; Review and Revision of Montemore Declaration. | 0.6 |
| 1/16/08 | EAC | Calculation of Attorneys' Fees & Costs; Review and Revise Motion for Default Judgment; Preparation of Documents for Filing. | 1.5 |
| | | **TOTAL:** | 6.6 |

192264



**January 2008 Summary**

| | | |
|---|---|---|
| Attorneys' Fees  (6.6 hours x $220) | = | $1,452.00 |
| Attorneys' Fees  (1/07 – 12/07) | = | $3,566.00 |
| Costs | = | $1,490.68 |
| **Grand Total:** | | **$6,508.68** |

Report ID:  OT2025 - 15260
Thursday, January 10, 2008

# Jennings Sigmond, P.C.
## Time And Expense Details

Printed By  MHT
Page  1

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| PTINTF | IUPAT Industry Pension Fund | 28692 | Metro Sandblasting & Painting | Sigmond, Richard B. |

Beginning To End

### Unbilled Time

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 10/4/2007 | EAC. | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Documents |
| 11/19/2007 | EAC | 0.80 | 0.80 | 220.00 | $176.00 | | | Preparation of Request for Default |
| | | | | | | | | Preparation of Entry and Withdrawal of Appearance |
| 11/19/2007 | KGC | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Correspondence and Preparation of Reply |

**Unbilled Time Totals** 1.00  1.00  $220.00

### Unbilled Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 8/31/2007 | ($573.10) | 7100 | Service Fee |
| 10/4/2007 | $14.28 | COPY | Photocopies |
| 11/8/2007 | $173.66 | 7100 | Service Fee |

**Unbilled Expenses Totals** ($385.16)

### Billed Time

| Post Date | Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/28/2007 | | | | | | | | | | Current Period | 02/26/2007 | 2 | 2007 |
| | 1/25/2007 | SGR | 0.50 | 0.50 | 200.00 | $100.00 | | | Review of Correspondence from Fund regarding New Delinquency Case | | | | |
| | | | | | | | | | Review of Documents | | | | |
| | | | | | | | | | Memo to File regarding Litigation | | | | |
| | 1/30/2007 | EAC | 0.40 | 0.40 | 200.00 | $80.00 | | | Review of New Case File | | | | |
| | 1/31/2007 | EAC | 0.60 | 0.60 | 200.00 | $120.00 | | | Preparation of Complaint | | | | |
| | 2/2/2007 | SGR | 0.20 | 0.20 | 200.00 | $40.00 | | | Review of Complaint | | | | |
| | 2/7/2007 | CTM | 0.20 | 0.20 | 70.00 | $14.00 | | | Review of Electronic Court Documents regarding Summons and Complaint | | | | |
| | 2/8/2007 | EAC | 0.20 | 0.20 | 200.00 | $40.00 | | | Review of File; Review of time stamped Complaint & Summons | | | | |
| | 2/23/2007 | CTM | 0.80 | 0.80 | 70.00 | $56.00 | | | Computer Research Location of Company and Steve Svinte | | | | |
| | 2/23/2007 | EAC | 0.30 | 0.30 | 200.00 | $60.00 | | | Review of e-mail from Legal Errands (x2); Review of File | | | | |
| | 2/26/2007 | EAC | 0.10 | 0.10 | 200.00 | $20.00 | | | Preparation of Correspondence to Legal Errands | | | | |
| | 4/3/2007 | EAC | 0.20 | 0.20 | 200.00 | $40.00 | | | Review of Correspondence from Legal Errands | | | | |
| | | | | | | | | | Preparation of Correspondence to Legal Errands | | | | |
| | | | | | | | | | Memo to File | | | | |
| | 4/19/2007 | EAC | 0.10 | 0.10 | 200.00 | $20.00 | | | Preparation of Correspondence to Legal Errands | | | | |

# Jennings Sigmond, P.C.
## Time And Expense Details

Report ID:  OT2025 - 15260
Thursday, January 10, 2008

Beginning To End

**Billed Time**

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 4/20/2007 | EAC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Legal Errands |
| 5/7/2007 | EAC | 0.90 | 0.90 | 200.00 | $180.00 | | Phone Conference with J. O'Donavan Regarding Difficulties with Service Memo to File Review of Alternate Methods of Service Computer Research Dunn & Bradstreet |
| 5/8/2007 | EAC | 0.40 | 0.40 | 200.00 | $80.00 | | Conference with Attorney S. Rosenthal Regarding Service of Process Phone Conference with Attorney C. Zucker |
| 5/8/2007 | SGR | 0.20 | 0.20 | 200.00 | $40.00 | | Office Conference with Attorney E. Coleman regarding Service in Michigan |
| 5/10/2007 | EAC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Attorney C. Zucher with Documents |
| 5/22/2007 | EAC | 0.10 | 0.10 | 200.00 | $20.00 | | Review of Correspondence from Legal Errands |
| 5/23/2007 | EAC | 0.80 | 0.80 | 200.00 | $160.00 | | Preparation of Motion for Substituted Service |
| 6/1/2007 | EAC | 0.20 | 0.20 | 220.00 | $44.00 | | Preparation of Correspondence to Attorney C. Zucker Preparation of Correspondence to Legal Errands Review of Correspondence from Legal Errands |

| Post Date | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|
| 07/03/2007 | Current Period | 06/01/2007 | 7 | 2007 |

| 6/4/2007 | EAC | 0.60 | 0.60 | 220.00 | $132.00 | | Review of Documents from Legal Errands Computer Research Westlaw Regarding Local Rules for Service of Complaint on Corporation |
|---|---|---|---|---|---|---|---|

| Post Date | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|
| 07/03/2007 | Current Period | 06/04/2007 | 7 | 2007 |

| 6/5/2007 | EAC | 5.10 | 5.10 | 220.00 | $1,122.00 | | Computer Research Secretary of State Regarding Corporation Standing, Methods of Service Preparation of Motion for Substituted Service Phone Conference with Legal Errands Regarding Original Documents Review and Revision of Motion and Order |
|---|---|---|---|---|---|---|---|

| Post Date | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|
| 07/03/2007 | Current Period | 06/05/2007 | 7 | 2007 |

| 6/12/2007 | EAC | 0.10 | 0.10 | 220.00 | $22.00 | | Check Docket on Pacer |
|---|---|---|---|---|---|---|---|

| Post Date | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|
| 07/03/2007 | Current Period | 06/12/2007 | 7 | 2007 |

| 6/29/2007 | EAC | 0.10 | 0.10 | 220.00 | $22.00 | | Pacer Research |
|---|---|---|---|---|---|---|---|

| Post Date | Status | Entry Date | Original Post Period | Original Post Year |
|---|---|---|---|---|
| 07/03/2007 | Current Period | 06/29/2007 | 7 | 2007 |

| 7/9/2007 | EAC | 0.40 | 0.40 | 220.00 | $88.00 | | Preparation of Litigation Status Report Pacer |
|---|---|---|---|---|---|---|---|

# Jennings Sigmond, P.C.
## Time And Expense Details

Report ID:   OT2025 - 15260
Thursday, January 10, 2008

Beginning To End

Printed By   MHT
Page         3

### Billed Time

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 7/24/2007 | EAC | 0.20 | 0.20 | 220.00 | $44.00 | | Preparation of Correspondence to C. Morton Pacer |
| 7/26/2007 | EAC | 0.30 | 0.30 | 220.00 | $65.00 | | Review of Order for Clarifying Supplement to Motion Review of File |
| 7/27/2007 | EAC | 2.40 | 2.40 | 220.00 | $528.00 | | Conference with Attorney S. Rosenthal Regarding Clarifying Supplement to Motion Phone Conference with Process Server Regarding Investigation Report Preparation of Ex Parte Supplement to Motion Computer Research Preparation of Correspondence to P. Gilbert Review of Revised Investigative Report |
| 7/27/2007 | CTM | 0.20 | 0.20 | 70.00 | $14.00 | | Preparation of Motion for Electronic Court Filing |
| 8/15/2007 | EAC | 0.30 | 0.30 | 220.00 | $66.00 | | Review of Correspondence from P. Gilbert Computer Research Pacer |
| 9/24/2007 | EAC | 0.20 | 0.20 | 220.00 | $44.00 | | Preparation of Correspondence to P. Gilbert |
| 10/26/2007 | EAC | 0.10 | 0.10 | 220.00 | $22.00 | | Review of Order Granting Substituted Service Preparation of Correspondence to P. Gilbert |
| 10/29/2007 | EAC | 0.10 | 0.10 | 220.00 | $22.00 | | Review of File Review of Correspondence from Legal Errands Memo to File |

### Billed Time

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals | | 16.50 | 16.50 | | $3,346.00 | |

### Billed Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 2/1/2007 | $350.00 | 7100 | Filing Fee - Complaint |
| 2/2/2007 | $11.13 | COPY | Photocopies |
| 2/3/2007 | $16.38 | SD | Special Delivery |
| 2/12/2007 | $13.12 | PO | Postage Charges |
| 6/1/2007 | $86.15 | CRDB | Computer Research - Dun & Bradstreet |
| 6/1/2007 | $2.96 | PO | Postage Charges |
| 6/5/2007 | $4.48 | COPY | Photocopies |
| 6/14/2007 | $573.10 | 7100 | Service Fee |
| 6/28/2007 | $225.55 | 7100 | Service Fee |
| 6/28/2007 | $573.10 | 7100 | Service Fee |
| 6/29/2007 | $9.17 | COPY | Photocopies |
| 7/1/2007 | $10.70 | CRWL | Computer Research - Westlaw |

### Billed Expenses

| | |
|---|---|
| Totals | $1,875.84 |

Report ID:  OT2025 - 15260
Thursday, January 10, 2008

# Jennings Sigmond, P.C.
## Time And Expense Details

Beginning To End

| | Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|---|---|---|---|---|---|
| Report Totals | 17.50 | 17.50 | $3,566.00 | $1,490.68 | $5,056.68 |

*** End Of Report ***

# Associate Hourly Billing Rates by Region



| Region | Median | 90th Percentile |
|---|---|---|
| New England | $185 | $250 |
| | $195 | |
| Middle Atlantic | | $273 |
| | $190 | |
| South Atlantic | | $270 |
| E. So. Central | $170 | $220 |
| W. So. Central | $175 | $240 |
| E. No. Central | $180 | $275 |
| W. No. Central | $145 | $190 |
| Mountain | $175 | $250 |
| Pacific | $195 | $290 |

Legend: ☐ Median  ■ 90th Percentile

**Source: Altman Weil Survey of Law Firm Economics
2005 Edition**

See following page for states included
in each region.





EXHIBIT

5



Census Regions and Divisions of the United States



# Median Hourly Billing Rates
## Litigation Specialties

Top Five Hourly Rates Equity and Non-Equity Partners

Antitrust: $380
IP: $330
Tax: $325
Employee Benefits: $305
Criminal: $305

Source: Altman Weil Survey of Law Firm Economics
2005 Edition



# THE 2004 ECONOMICS OF LAW PRACTICE IN OHIO SURVEY

## OSBA

## Introduction

During the spring of 2004, the Ohio State Bar Association, Section on Solo, Small Firms and General Practice (OSBA) surveyed the Ohio legal community on the economics of law practice. Two online surveys were utilized, replacing the single mail-based survey instrument provided in past years.

With respect to the economics of law practice, similar studies were undertaken in 2001, 1998, 1994 and 1990. The objectives of these studies were to determine, among other things:

- current demographics of practicing attorneys;

- attorney net income by practice category, gender, field of law, office location, work status, years in practice and firm size;

- associate, legal assistant, and secretary compensation by years of experience and office location;

- prevailing average hourly billing rates for attorneys by a variety of indicators, and rates for legal assistants by years of experience, firm size and office location;

- attorney time allocated to billable and non-billable professional activities; and

- overhead expenses associated with maintaining a private practice by office location and firm size.

Attorneys can compare themselves and their firms against "norms" established by the aggregation of survey data. Time series information is also provided to denote trends. Norms include statistics that are organized by combinations of office location, firm size, gender, work status (full-time vs. part-time), practice class, area of legal concentration and years of practice.

The above information has been consolidated into this reference to help guide attorneys as they plan and manage their professional lives.

For 2004, a survey dedicated to law office technology and marketing issues was also fielded at the same time as the economics survey. Findings from this survey are summarized as Current Issues on Law Office Technology and Marketing in Ohio, 2004 and are available at www.ohiobar.org

© 2004 Ohio State Bar Association. All rights reserved.

1

*Economics of Law Practice in Ohio • 9*



## IV.    BILLING RATES AND PRACTICES

### A.    Takeaways.

1.   The median hourly billing rate for all attorneys was *$175* for 2004 and *$110* for 1994. The average annual rate of increase in hourly billing rates during this time period was *5.9%.*

2.   Rates have increased the most in *suburban Cincinnati* (7.3% per year) and least in *suburban Columbus* (2.5%).

3.   Rates increased most for *partners in firms with 8+ partners* (5.9%) and least for *partners in firms with two to seven partners* (3.7%).

4.   *Rates increased the most for respondents in* firms with two to five attorneys (6.05%) and least for respondents in *firms with more than 20 attorneys* (4.2%).

5.   Rates increased the most for *estate planning attorneys* (9.5%) and *tax attorneys* (7.6%) and least for *bankruptcy* (2%) and *municipal/public entity* attorneys (- 1%).

6.   Fifty-six percent of respondents had *not changed* their rates in one year or more.

7.   When rates are raised, the prevalent increase is *6-10%* (41% of respondents).

8.   *Uncollectibles* (greater than 2% of fees billed) are increasing. The prevalent range is *3-8% of fees billed* (33% in 2004 and 30% in 2000).

9.   Attorneys are *increasingly adding service charges* to delinquent accounts where applicable (30% in 2004 compared with 20% in 1990).

### B.    Implications.

1.   There is still pricing power for legal services despite intense competition and an ever growing supply of attorneys.

2.   Existing and new practice management benchmarks should be available, especially for solos and small firm practicing attorneys, to enable relative standing self assessments.

## V.    ATTORNEY TIME ALLOCATIONS

### A.    Takeaways.

1.   The median value for *total hours* worked in 2004 rose to *50* from *48* in 1990 (2500 hours per year on a 50-week year).

**Law Firm Billing Rates and Billing Practices**

### 2004 Attorney Hourly Billing Rates

The reported 2004 median hourly billing rate is $200. The average is $206. While several interacting factors affect the setting and application of hourly billing rates, Exhibit 21 includes three discrete factors: respondents' firm size, years in practice and office location, while Exhibit 22 identifies respondents' primary source of income, and practice category.

**Exhibit 21    2004 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION**

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| Size of Firm | N | Mean | 25th | Median | 75th | 95th |
| 1 | 196 | $155 | $125 | $150 | $175 | $225 |
| 2 | 55 | 164 | 125 | 150 | 185 | 250 |
| 3-6 | 77 | 176 | 150 | 175 | 200 | 256 |
| 7-10 | 40 | 196 | 150 | 180 | 244 | 300 |
| 11-20 | 39 | 189 | 155 | 195 | 225 | 275 |
| 21-50 | 49 | 206 | 163 | 200 | 238 | 320 |
| 51+ | 72 | 249 | 186 | 240 | 300 | 377 |
| **Yrs. in Practice** | | | | | | |
| 5 or less | 70 | $147 | $125 | $143 | $175 | $222 |
| 6-10 | 78 | 164 | 125 | 150 | 190 | 250 |
| 11-15 | 65 | 185 | 150 | 180 | 228 | 296 |
| 16-25 | 131 | 184 | 150 | 165 | 220 | 306 |
| More than 25 | 183 | 200 | 150 | 190 | 230 | 340 |
| **Office Location** | | | | | | |
| Greater Cleveland | 121 | $200 | $150 | $185 | $238 | $350 |
| Greater Cincinnati | 61 | 199 | 150 | 180 | 245 | 325 |
| Greater Columbus | 120 | 194 | 150 | 180 | 233 | 300 |
| Greater Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Northeast Region | 98 | 165 | 125 | 163 | 196 | 250 |
| Northwest Region | 47 | 152 | 120 | 150 | 175 | 263 |
| Southern Region | 56 | 155 | 125 | 150 | 175 | 250 |
| Downtown Cleveland | 61 | $237 | $183 | $235 | $283 | $359 |
| Suburban Cleveland | 60 | 161 | 150 | 150 | 189 | 220 |
| Downtown Cincinnati | 40 | 213 | 153 | 200 | 271 | 368 |
| Suburban Cincinnati | 21 | 173 | 145 | 175 | 183 | 249 |
| Downtown Columbus | 67 | 217 | 165 | 210 | 260 | 334 |
| Suburban Columbus | 53 | 164 | 145 | 150 | 200 | 243 |
| Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Canton | 12 | 154 | 116 | 153 | 183 | 250 |
| Akron | 41 | 186 | 150 | 190 | 223 | 273 |
| Toledo | 26 | 170 | 144 | 168 | 186 | 285 |
| Youngstown | 9 | 146 | 113 | 150 | 178 | 200 |
| Northeast Ohio | 36 | 149 | 125 | 138 | 188 | 225 |
| Northwest Ohio | 21 | 129 | 100 | 125 | 150 | 180 |
| Southeast Ohio | 16 | 155 | 125 | 150 | 188 | 250 |
| Southwest Ohio | 25 | 146 | 125 | 150 | 170 | 207 |
| Central Ohio | 15 | 171 | 150 | 165 | 185 | 250 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

Exhibit 22　　　2004 HOURLY BILLING RATES BY PRIMARY
FIELD OF LAW AND PRACTICE CLASS

| Primary Field of Law | N | Mean | 25th | Median | 75th | 95th |
|---|---|---|---|---|---|---|
| Administrative Law | 5 | $241 | $188 | $260 | $285 | $295 |
| Bankruptcy, Debtor | 18 | 135 | 115 | 150 | 168 | 190 |
| Collections | 10 | 146 | 119 | 135 | 164 | 250 |
| Corporate/Business Law | 48 | 201 | 150 | 183 | 225 | 340 |
| Criminal (Public Defendant) | 9 | 139 | 100 | 125 | 175 | 225 |
| Criminal (Private Defendant) | 12 | 154 | 125 | 150 | 173 | 250 |
| Domestic Relations/Family Law | 55 | 173 | 125 | 150 | 200 | 280 |
| Environmental Law/Natural Resources Law | 6 | 200 | 151 | 168 | 283 | 305 |
| General Practice | 14 | 136 | 118 | 132 | 161 | 185 |
| Health & Hospital Law | 6 | 203 | 148 | 195 | 263 | 300 |
| Intellectual Property | 10 | 216 | 174 | 223 | 250 | 300 |
| Labor Law (Management) | 6 | 185 | 150 | 168 | 236 | 255 |
| Employment Law (Management) | 25 | 187 | 138 | 175 | 238 | 324 |
| Employment Law (Labor) | 6 | 178 | 151 | 175 | 208 | 230 |
| Municipal/Public Entity Law | 8 | 164 | 111 | 138 | 225 | 305 |
| Product Liability | 5 | 226 | 138 | 205 | 325 | 425 |
| Personal Injury (Defendant) | 25 | 148 | 110 | 135 | 175 | 270 |
| Personal Injury (Plaintiff) | 43 | 179 | 150 | 160 | 200 | 300 |
| Professional Liability | 6 | 164 | 149 | 165 | 178 | 185 |
| Real Property Law | 26 | 164 | 125 | 150 | 195 | 315 |
| Taxation | 7 | 231 | 175 | 220 | 295 | 300 |
| Trial Practice, not PI (General Civil) | 20 | 190 | 140 | 177 | 200 | 415 |
| Trial Practice, not PI (Commercial) | 20 | 224 | 181 | 210 | 276 | 387 |
| Estate Planning/Wealth Management | 36 | 209 | 175 | 205 | 233 | 308 |
| Probate, Decedents' Estates | 49 | 176 | 150 | 175 | 200 | 250 |
| Workers' Compensation (Plaintiff) | 6 | 167 | 125 | 150 | 213 | 250 |
| Other | 23 | 200 | 150 | 190 | 250 | 358 |
| **Practice Classification** | | | | | | |
| Sole Practitioner | 168 | $153 | $125 | $150 | $175 | $225 |
| Solo with 1+ associates | 42 | 181 | 150 | 175 | 203 | 259 |
| Space Sharer | 21 | 160 | 125 | 150 | 175 | 275 |
| Partner in Firm with 2-7 Partners | 114 | 184 | 150 | 175 | 221 | 300 |
| Partner in Firm with 8+ Partners | 88 | 249 | 196 | 240 | 300 | 381 |
| Associate in Firm with 2-7 Partners | 31 | 156 | 125 | 150 | 175 | 264 |
| Associate in Firm with 8+ Partners | 56 | 180 | 150 | 175 | 210 | 263 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience in Exhibit 23, by office location (Exhibits 24 and 25), and by firm size (Exhibits 26 and 27).

**Exhibit 26        DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND YEARS OF EXPERIENCE**

| Associate Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
|---|---|---|---|---|---|
| | 2 | 3-6 | 7-20 | 21+ | All |
| **No Experience** | | | | | |
| <$135 | 57.9 | 78.1 | 69.0 | 43.5 | 61.9 |
| $136-145 | 15.8 | 9.4 | 10.3 | 19.6 | 13.5 |
| $146-155 | 15.8 | 9.4 | 17.2 | 19.6 | 16.1 |
| $156-165 | | | 1.7 | 6.5 | 2.6 |
| $166-175 | 10.5 | | 1.7 | 4.3 | 3.2 |
| $176-199 | | | | 6.5 | 1.9 |
| $225-249 | | 3.1 | | | 0.6 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **3 Years Experience** | | | | | |
| <$135 | 43.8 | 35.3 | 39.0 | 13.0 | 31.0 |
| $136-145 | 18.8 | 20.6 | 22.0 | 19.6 | 20.6 |
| $146-155 | 25.0 | 29.4 | 20.3 | 21.7 | 23.2 |
| $156-165 | | 11.8 | 6.8 | 13.0 | 9.0 |
| $166-175 | 6.3 | 2.9 | 6.8 | 23.9 | 11.0 |
| $176-199 | 6.3 | | 5.1 | 8.7 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **5 Years Experience** | | | | | |
| <$135 | 12.5 | 24.0 | 25.0 | 4.3 | 16.9 |
| $136-145 | 25.0 | 8.0 | 10.7 | 10.6 | 11.0 |
| $146-155 | 12.5 | 40.0 | 25.0 | 10.6 | 22.1 |
| $156-165 | 12.5 | 12.0 | 17.9 | 17.0 | 16.2 |
| $166-175 | | 16.0 | 10.7 | 10.6 | 11.0 |
| $176-199 | 12.5 | | 10.7 | 29.8 | 15.4 |
| $200-224 | 25.0 | | | 14.9 | 6.6 |
| $225-249 | | | | 2.1 | 0.7 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **10 Years Experience** | | | | | |
| <$135 | 33.3 | 14.8 | 19.5 | 5.4 | 14.9 |
| $136-145 | 11.1 | | 4.9 | 2.7 | 3.5 |
| $146-155 | | 22.2 | 14.6 | 5.4 | 12.3 |
| $156-165 | 22.2 | 7.4 | 4.9 | 5.4 | 7.0 |
| $166-175 | | 14.8 | 14.6 | 16.2 | 14.0 |
| $176-199 | | 18.5 | 26.8 | 18.9 | 20.2 |
| $200-224 | 22.2 | 18.5 | 14.6 | 18.9 | 17.5 |
| $225-249 | 11.1 | 3.7 | | 10.8 | 5.3 |
| $250+ | | | | 16.2 | 5.3 |
| Total | 100% | 100% | 100% | 100% | 100% |

**Exhibit 27**    **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE**

| Legal Assistant Billing Rate Category | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|
| **No Experience** | | | | | |
| $50 or less | 40.0 | 60.0 | 50.0 | 20.0 | 41.0 |
| $51-60 | 30.0 | 20.0 | 20.0 | 17.1 | 20.0 |
| $61-70 | 10.0 | 4.0 | 10.0 | 5.7 | 7.0 |
| $71-80 | 20.0 | 8.0 | 10.0 | 25.7 | 16.0 |
| $81-90 | | 4.0 | 10.0 | 8.6 | 7.0 |
| $91-100 | | 4.0 | | 17.1 | 7.0 |
| $101-110 | | | | 5.7 | 2.0 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| $50 or less | 12.5 | 25.0 | 13.3 | 2.8 | 11.7 |
| $51-60 | 62.5 | 35.0 | 23.3 | 11.1 | 24.5 |
| $61-70 | | 20.0 | 26.7 | 22.2 | 21.3 |
| $71-80 | | 10.0 | 13.3 | 11.1 | 10.6 |
| $81-90 | 12.5 | 5.0 | 10.0 | 22.2 | 13.8 |
| $91-100 | 12.5 | | 10.0 | 8.3 | 7.4 |
| $101-110 | | 5.0 | 3.3 | 8.3 | 5.3 |
| $111-120 | | | | 11.1 | 4.3 |
| >$120 | | | | 2.8 | 1.1 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| $50 or less | 16.7 | 4.5 | 8.6 | 2.9 | 6.2 |
| $51-60 | | 27.3 | 17.1 | 5.9 | 14.4 |
| $61-70 | 66.7 | 22.7 | 11.4 | 14.7 | 18.6 |
| $71-80 | 16.7 | 31.8 | 34.3 | 11.8 | 24.7 |
| $81-90 | | 4.5 | 14.3 | 11.8 | 10.3 |
| $91-100 | | | 11.4 | 17.6 | 10.3 |
| $101-110 | | 9.1 | | 11.8 | 6.2 |
| $111-120 | | | | 11.8 | 4.1 |
| >$120 | | | 2.9 | 11.8 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| $50 or less | 20.0 | | 2.7 | 3.0 | 3.9 |
| $51-60 | 20.0 | 9.1 | 18.9 | 3.0 | 11.8 |
| $61-70 | | 13.6 | 13.5 | 12.1 | 11.8 |
| $71-80 | 30.0 | 40.9 | 18.9 | 6.1 | 20.6 |
| $81-90 | 10.0 | 18.2 | 21.6 | 6.1 | 14.7 |
| $91-100 | | 13.6 | 16.2 | 18.2 | 14.7 |
| $101-110 | | 4.5 | | 12.1 | 4.9 |
| $111-120 | 20.0 | | 5.4 | 18.2 | 9.8 |
| >$120 | | | 2.7 | 21.2 | 7.8 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 28 displays the impact of firm size on methods for client billing for legal assistants:

**Exhibit 28**    **LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2004**

| Billing Method for Legal Assistants | 1 | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|---|
| Included with Attorney Fee | 47.1 | 59.5 | 39.7 | 19.7 | 4.7 | 32.1 |
| Time | 42.9 | 35.1 | 55.2 | 73.8 | 87.5 | 60.7 |
| Fee Schedule | 8.6 | 5.4 | 5.2 | 3.3 | 6.3 | 5.9 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% |